UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

FRANCISCO SANCHEZ,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

21-CR-00070 (PMH)

13-CR-00065 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

    Francisco Sanchez ("Defendant") stands charged in a single-count indictment in *United States v. Sanchez*, No. 21-CR-00070 (S.D.N.Y.) ("Criminal Docket"), of violating 18 U.S.C. § 922(g)(1). (Crim. Doc. 12).[1] The indictment alleges that on or about December 10, 2020, Defendant—having previously been convicted of a crime punishable by a term of imprisonment exceeding one year—knowingly possessed a loaded firearm in and affecting interstate and foreign commerce. (*Id.*). On December 10, 2020 (i.e., the day on which Defendant is accused of possessing the firearm), Defendant was in the process of serving a three-year term of supervised release imposed by Judge Shira Scheindlin in *United States v. Sanchez*, No. 13-CR-00065 (S.D.N.Y.) ("VOSR Docket") on October 26, 2015. (VOSR Doc. 40; VOSR Dkt., Dec. 11, 2020 Min. Entry).[2] The conduct at issue in the Criminal Docket is also the basis of a pending violation of supervised release in the VOSR Docket. (VOSR Dkt., Dec. 11, 2020 Min. Entry).

    Presently before the Court is Defendant's motion, which the Court construes as one under Federal Rule of Criminal Procedure 12(b)(3), to suppress the firearm and ammunition recovered

---

[1] For ease of reference, any citations to docket entries from the Criminal Docket shall, depending upon the entry cited, use one of the two following formats: "Crim. Dkt." or "Crim. Doc."

[2] Mirroring references to the Criminal Docket, depending upon the entry cited, any citations to docket entries from the VOSR Docket shall use one of the two following formats: "VOSR Dkt." or "VOSR Doc."

from a storage unit rented by Defendant at Ramapo Mini Storage, Inc. in Rockland County, New York, along with any statements Defendant subsequently made to law enforcement.[3] Defendant served and filed his motion papers on October 1, 2021. (Crim. Doc. 34; Crim. Doc. 35; Crim. Doc. 36; Crim. Doc. 37, "Def. Br.").[4] The motion was briefed fully with the service and filing of the Government's opposition brief on November 23, 2021. (Crim. Doc. 42, "Gov't Br.").[5] Shortly thereafter, during a telephone status conference held on December 6, 2021, the Court heard argument on the motion. (Crim. Dkt., Dec. 6, 2021 Min. Entry).

On January 20, 2022, the Court instructed each party "to provide Chambers with a hard copy and an electronic copy of the evidence referred to in their memoranda of law on or before January 21, 2022." (Crim. Doc. 47; *see also* Crim. Doc. 49). Defendant provided his evidence to the Court by e-mail on January 20, 2022, with a copy received in Chambers via first class mail on January 24, 2022; the Government provided its evidence to the Court by e-mail and hand delivery to Chambers on January 21, 2022.[6]

For the reasons set forth below, the motion to suppress is DENIED.

---

[3] Defendant's notice of motion did not refer to a specific provision of the Federal Rules of Criminal Procedure. (*See* Crim Doc. 34). Federal Rule of Criminal Procedure 12(b) states, in relevant part: "The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits: . . . (C) suppression of evidence." Fed. R. Crim. P. 12(b)(3)(C).

[4] Defendant filed his notice of motion and supporting declarations twice—once, in a single docket entry with subparts, and then in separate docket entries. (*See generally* Crim. Doc. 33; Crim. Doc. 34; Crim. Doc. 35; Crim. Doc. 36). The Court notes that, with respect to the relief sought, Defendant does not identify the statements made to law enforcement that he wishes to suppress.

[5] Defendant's reply papers in further support of his motion, if any, were to be served and filed on or before December 1, 2021. (Crim. Doc. 41). Defendant, however, neither submitted papers in reply nor requested an extension of time to do so. The Court, therefore, deems the motion fully briefed and ripe for adjudication.

[6] The Government provided copies of USAO_00052-54, USAO_000107-08, USAO_000366-71, three unstamped photographs (enlarged from USAO_000368-39), and six unstamped pages of file data. Defendant provided copies of USAO_00052-53, USAO_000195, USAO_000197-98, and USAO_000210.

**BACKGROUND**

I. <u>The Prior Proceeding, Conviction, and Supervised Release Conditions</u>

On October 26, 2015, Defendant was resentenced by Judge Scheindlin to eighty months' imprisonment to be followed by three years' supervised release in connection with a 2013 conviction for violating 18 U.S.C. § 922(g)(1)—the very crime with which he is charged in the Criminal Docket. (VOSR Doc. 17; VOSR Doc. 40; Crim. Doc. 12).[7] Of the various conditions Judge Scheindlin imposed on Defendant's supervised release at his resentencing, three are relevant to the instant analysis. First, Judge Scheindlin directed that Defendant "shall not commit another federal, state, or local crime." (VOSR Doc. 40 at 3). Second, Judge Scheindlin ordered that Defendant "shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon." (*Id*.). Third, Judge Scheindlin mandated, under the heading "Additional Supervised Release Terms," that:

> Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the Probation Department has a reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(*Id*. at 4).

II. <u>The December 2020 Arrest</u>

Based upon the parties' submissions, the events surrounding Defendant's December 10, 2020 arrest are not in dispute.

---

[7] Although Judge Scheindlin sentenced and then resentenced Defendant in the VOSR Docket, that matter was reassigned to Judge Katherine Polk Failla on April 19, 2016. (*See* VOSR Dkt., Apr. 19, 2016 Min. Entry). The VOSR Docket was, in turn, reassigned to this Court on March 10, 2021. (*See* VOSR Dkt., Mar. 10, 2021 Min. Entry).

On December 7, 2020, Miosotis Hernandez ("Miosotis")—Defendant's wife—contacted U.S. Probation Officer Christopher Baker ("USPO Baker") to report, *inter alia*, that she "observed [Defendant] possess[ing] a firearm months earlier in or around February or March of 2020 and that she 'had not seen the firearm since.'" (Def. Br. at 3 (quoting USAO_000195)).

About three days later, a little after noon on December 10, 2020, Miosotis' sister contacted USPO Baker to report that Miosotis found a firearm in the home she shared with Defendant. (Def. Br. at 3 (citing USAO_000197); Gov't Br. at 4; *see also* USAO_000198 (New York State Police Report noting that, on December 9, 2020, Miosotis saw "what looked to be like a black and gray pistol inside of a box" in the house she shared with Defendant)). Miosotis discovered the firearm on December 8, 2020. (Def. Br. at 3 (citing USAO_000197); Gov't Br. at 4; *but see* USAO_000198 (New York State Police Report noting that Miosotis found the firearm on December 9, 2020)). Miosotis' sister forwarded photos of the subject firearm to USPO Baker. (USAO_000367-69; USAO_000197). Miosotis' sister advised further that Defendant had rented Storage Unit 724 at Ramapo Mini Storage, Inc. in Rockland County, New York ("Storage Unit") (*see* Gov't Br. at 4-7; USAO_00108; USAO_000370-71), and that Miosotis "believed that the firearm was 'likely' to be found in one of his 'storage boxes,' but she was not sure if it was 'in the storage unit, in his car or on his person,'" (Def. Br. at 3 (quoting USAO_000197)). Apparently, Miosotis had sold the house in which she and Defendant resided, and Defendant was moving his personal items to the Storage Unit because the closing of that sale was taking place in or around December 10, 2020. (USAO_000197 ("Her house is due to close today, pending FS removes his remaining items in the home. FS is using a rental truck to transport their items to a local storage unit.")).

At approximately 8:48 p.m. that night, the Haverstraw Police Department ("HPD")—working with the U.S. Probation Department and FBI—stopped Defendant's vehicle and took him into custody. (Gov't Br. at 7; Def. Br. at 3; *see also* USAO_00052; USAO_000107).[8]

Roughly an hour later, at about 9:57 p.m., agents from the U.S. Department of Probation and FBI, having learned that Defendant was renting the Storage Unit from an employee of the storage facility itself (USAO_00052; *see also* USAO_000370-71), cut the Storage Unit's pad lock and conducted a search. (Def. Br. at 3; Gov't Br. at 7; *see also* USAO_000108). Law enforcement recovered a Smith & Wesson, model SD9 VE, 9mm pistol bearing serial number FWK7089 matching the photos USPO Baker received from Miosotis' sister, and a magazine containing twelve rounds of 9mm ammunition. (Gov't Br. at 7; USAO_00053; USAO_00108).

Following his arrest, Defendant called family members from the Ramapo Police Department. (USAO_00053).[9] During a three-way call with certain family members, Defendant:

> made a spontaneous utterance that it [was] a good thing that he was locked up, because if he found out it was her, meaning his wife [i.e., Miosotis], that contacted law enforcement, then he would make an example of her brother or other family.

(*Id.*). The charges pending in the Criminal and VOSR Dockets followed.

---

[8] HPD recovered a set of keys from Defendant's pocket following the stop. (Gov't Br. at 7; USAO_000107). It is not clear, based upon the parties' submissions, whether law enforcement knew when they inventoried the keys that one of them was for the padlock on the Storage Unit. (*See* Gov't Br. at 7 (noting that HPD "recovered a set of keys from [Defendant's] pocket, one of which law enforcement would later confirm was for the lock that secured the Storage Unit")).

[9] Defendant, according to the documents provided to the Court, was "transport[ed] . . . from HPD to [the] Ramapo Police Department . . . until he could be presented in WP Federal Court . . . ." (USAO_000108).

## ANALYSIS

Defendant posits that: (1) there was no reasonable suspicion to search the Storage Unit; (2) the warrantless search was not, in any event, permitted by the conditions of supervised release; and (3) the search was not conducted in a reasonable time and manner. (*See* Def. Br. at 7-11).

I. Reasonable Suspicion to Search the Storage Unit

The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. As that "text makes clear, the concept of reasonableness is the touchstone of the constitutionality of a governmental search. What is reasonable, of course, depends on all the circumstances surrounding the search . . . and the nature of the search . . . itself." *MacWade v. Kelly*, 460 F.3d 260, 267-68 (2d Cir. 2006) (internal citations and quotation marks omitted). "Warrantless searches and seizures are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Weaver*, 9 F.4th 129, 138 (2d Cir. 2021) (internal quotation marks omitted). One such exception is "where the government has special needs, beyond the normal need for law enforcement. This exception applies to individuals . . . who are serving a term of federal supervised release." *United States v. Jackson*, 663 F. App'x 31, 33 (2d Cir. 2016) (internal citations and quotation marks omitted); *see also United States v. Elder*, 805 F. App'x 19, 21 (2d Cir. 2020) (explaining that "an individual on supervised release has a 'diminished expectation of privacy that is inherent in the very term *supervised* release'" (quoting *United States v. Balon*, 384 F.3d 38, 44 (2d Cir. 2004) (emphasis in original))). Indeed, "in monitoring individuals on supervised release, probation officers must be given considerable investigative leeway . . . [because] they act as the eyes and ears of the court." *Id*. at 22 (internal citations and quotation marks omitted). As the Second

6

Circuit has observed, supervised release "is meted out in addition to, not in lieu of, incarceration . . . ." *United States v. Lifshitz*, 369 F.3d 173, 181 n.4 (2d Cir. 2004) (internal quotation marks omitted). In consideration of the foregoing:

> the Supreme Court has held that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." Under such circumstances, the Fourth Amendment does not require the officer to obtain a warrant.

*Jackson*, 663 F. App'x at 33 (quoting *United States v. Knights*, 534 U.S. 112, 121 (2001) (internal citations omitted)).

"An officer has a reasonable suspicion when he or she is 'aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion.'" *United States v. Bazemore*, No. 20-CR-00573, 2021 WL 1719233, at *2 (S.D.N.Y. Apr. 30, 2021) (quoting *United States v. Brignoni-Ponce*, 442 U.S. 873, 884 (1975)). "This 'standard takes into account the totality of the circumstances—the whole picture.'" *United States v. DeJesus*, 538 F. Supp. 3d 382, 393 (S.D.N.Y. 2021) (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)); *see also United States v. Arvizu,* 534 U.S. 266, 273 (2002) ("[W]e have said repeatedly that [reviewing courts] must look at the totality of circumstances of each case to see whether the . . . officer has a particularized and objective basis for suspecting legal wrongdoing." (internal quotation marks omitted)). "Reasonable suspicion is an objective standard; hence, the subjective intentions or motives of the officer . . . are irrelevant." *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000). "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that

reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990).

The undisputed facts here support reasonable suspicion to conclude that Defendant violated at least two conditions of his supervised release—namely, the mandates that he not commit another federal crime or possess a firearm. Defendant, before December 10, 2020, had thrice been convicted of criminal possession of a firearm. (*See* VOSR Doc. 38 at 4-5, 7-9).[10] With that background, on December 7, 2020, Miosotis told USPO Baker that she had seen a firearm in Defendant's possession some nine months earlier. (*See* Def. Br. at 3; USAO_000195). Days later, on December 10, 2020, Miosotis' sister: (1) advised USPO Baker that Miosotis discovered a firearm in the house she shared with Defendant; (2) forwarded pictures of the firearm to USPO Baker; and (3) informed USPO Baker of Miosotis' belief that the firearm was either in the Storage Unit, in Defendant's vehicle, or on Defendant's person—along with all pertinent information associated with the Storage Unit. (*See* Def. Br. at 3; Gov't Br. at 4-6; USAO_000197; USAO_000366-70). Given that the closing on the house was taking place as USPO Baker learned of this information, there would have been no doubt that Defendant moved the firearm from the house to his person, automobile, or Storage Unit.

In sum, on December 10, 2020 reasonable suspicion existed to believe that Defendant possessed a firearm in violation of both federal law and the conditions of his supervised release.

---

[10] While discussion of criminal history and proclivity may be curtailed at trial by the Federal Rules of Evidence, Defendant's penchant for firearms offenses is certainly a consideration in evaluating reasonable suspicion. *See, e.g.*, *Jackson*, 663 F. App'x at 34 (reasonable suspicion to believe drug trafficking was afoot and conduct search of individual who violated supervised release existed where, *inter alia*, the individual "had a history of trafficking narcotics"); *Leniart v. Bundy*, No. 09-CV-00009, 2017 WL 1020971, at *10 (D. Conn. Mar. 16, 2017) ("Criminal history is but one of many factors that can support a finding of reasonable suspicion."), *aff'd sub nom. Leniart v. Ellison*, 761 F. App'x 47 (2d Cir. 2019).

II.    <u>The Search Condition's Applicability to the Storage Unit</u>

Defendant's second argument is that the search was improper because the Storage Unit was not subject to search under the supervised release conditions imposed by Judge Scheindlin. (*See* Def. Br. at 9-11). As explained previously, one condition read, in its entirety, as follows:

> Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the Probation Department has a reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(VOSR Doc. 40 at 4). Defendant's argument, in its simplest form, is that "other premises under his control" cannot include the Storage Unit because he was obliged to "inform any other residents that the premises may be subject to search." (*See* Def. Br. at 9-11). He argues that because nobody *resided* in the Storage Unit, it did not constitute "premises," so a warrant was required to conduct a lawful search.[11]

"[W]here an order or judgment is unclear, a court retains inherent authority to interpret ambiguities . . . ." *United States v. Rasheed*, 981 F.3d 187, 198 (2d Cir. 2020) (quoting *United States v. Spallone*, 399 F.3d 415, 421 (2d Cir. 2005) (first alteration in original)). If, however, "a 'judgment is clear and unambiguous,' a court must 'adopt, and give effect to, the plain meaning of

---

[11] Defendant argues that Judge Scheindlin's decision in *United States v. Kone*, 591 F. Supp. 2d 593 (S.D.N.Y. 2008) supports his argument that a warrant was required to search the Storage Unit. (Def. Br. at 10). The Court does not agree. The defendant in *Kone* "was serving a federal term of supervised release, but no statute, special condition of release, or regulation authorized a warrantless search of his home." 591 F. Supp. 2d at 597. That case is distinguishable from the scenario presented here. Indeed, a warrantless search is clearly contemplated by the plain language of the search condition that Judge Scheindlin imposed, as Defendant was required to "submit . . . to a search on the basis that the Probation Department has a reasonable belief that contraband or evidence of a violation of the conditions of the release may be found." (VOSR Doc. 40 at 4); *see also United States v. Harris*, No. 19-CR-00746, 2021 WL 1512724, at *5 (S.D.N.Y. Apr. 16, 2021) (denying motion to suppress on substantially similar language after concluding that reasonable suspicion existed for the search).

the judgment.'" *Spallone*, 399 F.3d at 421 (quoting 46 Am. Jur. 2d Judgments § 93). The Court, in this case, finds no ambiguity in the search condition imposed by Judge Scheindlin.

"Premises" is defined, in pertinent part, as "[a] definite portion of real estate; land with its appurtenances; also, a building or part of a building." *Premises*, Funk & Wagnalls Standard College Dictionary (1973). The Storage Unit, accordingly, clearly qualifies as "other premises under [Defendant's] control." To accept the argument that "other premises under [Defendant's] control"—which was enumerated as a separate and distinct catchall alongside *residence* in the same sentence—is limited only to locations where "residents" would normally be found would lead to an absurd redundancy. That reading would eliminate areas clearly under Defendant's control (i.e., standalone storage units and lockers) from a search condition whose plain reading clearly stretches beyond places where people may reside. Taken to its logical extreme, Defendant's argument would mean that, as applied to these facts, a search of the Storage Unit (i.e., "other premises under [Defendant's] control"), could only occur without a warrant if there were "residents" living therein. That is a *reductio ad absurdum*.

Defendant's argument is a lawyer's argument. The condition's plain language is neither ambiguous nor confusing and plainly encompasses the Storage Unit. That the word "residence" could be substituted for the word "premises" in the last sentence, to make matters crystal clear, does not detract from the plain meaning of this search condition. Defendant's suppression motion cannot be predicated on arguments where only the astutely articulate prevail. Rather, to prevail, the motion must be founded on concrete arguments regarding specific locations excluded from the search condition. The extant motion lacks such concrete arguments.

III.     Conducting the Search in a Reasonable Time and Manner

Defendant's final argument is that, even if there was reasonable suspicion to search the Storage Unit *and* it was covered by the search condition, the search was improper because it was not conducted "at a reasonable time and in a reasonable manner" because he was in custody before the search commenced. (Def. Br. at 11). Defendant does not cite—and the Court has not located—any precedent supporting the notion that the search here was conducted at an unreasonable time or in an unreasonable manner. It seems, in any event, that Defendant's complaint is simply that law enforcement should not have broken the lock on the Storage Unit because they had both Defendant and the key in custody.[12]

This search, on these facts, did not violate the requirement that it be done at a reasonable time and in a reasonable manner. *Cf. Harris*, 2021 WL 1512724, at *5 ("Defendant does not allege that the search was performed in an unconstitutional manner and merely alleges that it was early and there were many law enforcement officers with weapons. Therefore, the Court concludes that the search was conducted at a reasonable time and in a reasonable manner."). Defendant was moving his belongings because of the sale of the home; as such, there was nothing unreasonable about the time and manner of this search, being at or around the time Defendant's possessions (including the firearm) were being relocated.

---

[12] The only case to which Defendant does cite is a case addressing the plain-view exception to the warrant requirement. (Def. Br. at 11 (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)).

11

**CONCLUSION**

For the foregoing reasons, Defendant's motion to suppress the firearm and ammunition recovered from the Storage Unit—along with any statements Defendant subsequently made to law enforcement—is DENIED.

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Crim. Doc. 33 and Crim. Doc. 34. [13]

SO ORDERED:

Dated:  White Plains, New York
        February 11, 2022

_____
PHILIP M. HALPERN
United States District Judge

---

[13] "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Cantoni*, No. 19-4358-CR, 2022 WL 211211, at *3 (2d Cir. Jan. 25, 2022) (quoting *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (alteration in original)). Even if the parties had requested a hearing in connection with this motion—and neither has—it would be unnecessary because there are no "contested issues of fact that must be resolved in order for this Court to rule on [the] motion to suppress." *United States v. Holt*, No. 21-CR-00080, 2021 WL 5281366, at *2 (D. Conn. Nov. 12, 2021); *see also United States v. Merced*, No. 19-CR-00832, 2021 WL 5647827, at *11 (S.D.N.Y. Nov. 30, 2021) ("Courts in this district 'have broad discretion when deciding whether or not to hold a suppression hearing.'" (quoting *United States v. Shamsideem*, No. 03-CR-01313, 2004 WL 1179305, at *9 (S.D.N.Y. Mar. 31, 2004))).